Administrator of the estate of Kevin Beebe, 15 minutes per side, Mr. Corrigan, for the appointment. Good morning, your honors.   If it pleases the court, I represent Caroline Scardina, the administrator of the estate of Kevin Beebe. The estate appeals the ruling of the District Court of the Northern District of Ohio, granting summary judgment to Mid-Continent Insurance, determining in essence that there is no coverage for the claims made against the inn in West Andover and its owners, Jason Coder and Martha L. Dolan, in a civil action filed in the state court in Ohio. There's basically two real questions that are being raised here. Number one, do the pleadings allege a bodily injury as that is caused by an occurrence within the Mid-Continent policy? And if so, was that bodily injury excluded by the liquor liability exclusion in the policy? And more importantly, were these pled correctly or basically were they pled in the state court civil action? The estate sets forth two basic arguments. Under Ohio law, the allegations within the state court complaint fall within the coverage afforded by the Mid-Continent insurance policy provided to the inn in West Andover. And two, the liquor liability exclusion in the Mid-Continent policy does not preclude coverage as legal theories and facts set forth in the complaint fall outside the exclusion's On December 15th, Carolinas Gardena filed this complaint in Cuyahoga County Court seeking relief for the injuries of the death of Kevin Beebe. The first claim for relief set forth claims against Michael D. Baker, the drunk driver who struck and killed Kevin Beebe. And in that claim for relief, there were several claims set forth against Mr. Baker. Not only negligence, but also the wrongful death statute under Ohio law. Those aren't at issue here. Those are not at issue here. The ones that are at issue. All right. But basically what I'm trying to set forth, Your Honor, is how the complaint is set up was by the parties, not by individual claims. And so in the third claim we have against Green, fourth claim we have against Progressive. The claim against the inn. The claim against the inn is that the employees basically forced Kevin Beebe off the property in a situation that was, in all likelihood, he was going to die. Well, what about it made him, in all likelihood, going to die? Well, number one, the location of this bar is set in the middle of nowhere. If you ever go out there, it is a very rural area. It's on a highway, basically, 50 mile an hour, one lane road, no sidewalks. It's two miles back to Route 11, two miles to the township of Andover. It's midnight, and it's a thunderstorm going on. I shouldn't say a thunderstorm. There's a storm going on. Basically, there's no lighting whatsoever. So he has nowhere to go. And they don't just set him outside of the bar. They don't let him stand in the parking lot. Now, those facts, where do those come in? Because when I try to read the underlying facts, there's some people who are saying at some points in some things that he called for a ride, that he left before the ride came, but the forcing him out of the parking lot, where do you get that from? That basically is coming from witnesses. And here's the problem. Well, give me the witness and the document. Well, we don't have those on the record, and that's the problem, because what we're going off of, Your Honor, is just basically a complaint. Now, the other side has put in some admissions, but to me those do not fit within Rule 56 because the guy who admitted to these things wasn't there. He can't admit to that. That's not your point. Okay, so the short answer is you're giving us what would happen if this got to trial, but that's not what we're interested in right now. Correct. Okay, so let's look at. . . We're under notice pleading. Let me look at your notice then, because here's what I see as the crux of the issue to me. Your paragraph 17 says, Despite its knowledge that he was intoxicated and had no ride, they negligently forced him to leave the bar. Correct. 18 says they violated the Dram Shop Act. 19 says they should have known great probability of harm yet recklessly disregarded. To me, you're saying, hopefully, 17 and 18 are independent claims as a way of getting to 19. They say 17 and 18 have to be read together. They're only one claim. It's all a Dram Shop claim. Is that a fair way of stating the two views? And I would say, actually, 19 can be read independently as well because it's technically saying recklessly treating him out there. So to me, you can basically make a claim beyond negligence of recklessness in putting him in that situation. Well, they recklessly disregarded, but if it weren't negligent to start with, then you're . . . And admittedly, Your Honor, I don't understand the Dram Shop Act because, once again . . . You cited it. Well, but actually, I did not . . . Whoever did, sorry. This was actually . . . this case came to us later on. We did not file the complaint. Filed by someone else. Yeah. So, I mean . . . I'd like to ask a couple questions, all right? There's . . . your contention now is that there's a Dram Shop claim and then there's an independent negligence claim, right? Clearly, yes. The negligence claim, as I'm seeing it, number 17, indicates that the decedent was intoxicated and had no ride, and therefore it's negligent to eject him. Is that correct? It's not . . . that's part of the negligence. Right. But it's hard to see how it would have been negligent if he had not been intoxicated. I think if you're sober to have put him in this situation, you're basically asking to nearly kill somebody because, once again, this is . . . That isn't what the complaint says. It says, despite his knowledge that the decedent was intoxicated and had no ride, they negligently forced him to leave the building. That's the allegation, right? And even . . . Most people would read that to say, you sent him out when he was drunk. Right. And he had no ride. It doesn't say, despite the fact that he had no ride and it was two miles to the next bus stop or whatever it was, they negligently forced him. Right? We're supposed to look at the complaint, right? Understood. So if you treat it as negligence, just assume for the moment, because that at least can be read that, treat it as negligence from intoxication, then I want to know what you do with the first sentence of the Dram Shop Act. The first sentence of the Dram Shop Act says, no person or administrator of a person who suffers death as a result of actions of an intoxicated person has a cause of action against any liquor permit holder who sold beer or intoxicating liquor to the intoxicated person. And then there's an exception that doesn't apply here. Why doesn't that just flatly say you lose, assuming that your claim is based on the fact that he was intoxicated? Are you citing Ohio Revised Code 4399.18? Yeah. Okay. First sentence is a preclusion. That's what a Dram Shop normally in most states is. It's a protection for liquor purveyors, you know, bars, right? It says you are not liable for any of this stuff unless you fit within these narrow categories. So the way you have this drafted makes sense, is that, you know, he did this, and therefore he's liable under the Dram Shop statute because people who know the statute know that otherwise you can't recover. Because actually, if I can, if you really go through the Dram Shop Act, and I'm kind of getting old about getting caught in the weeds for this because now we're talking about duties that Ohio courts should determine, not the court here because I think we should be going to contract. You're talking about whether, as you say, the pleadings allege a cause of action that's based on intoxication. It sure seems to be, and your argument has been well, but we're not alleging a Dram Shop cause of action. But the Dram Shop precludes other ones. That's my problem. But what the contract is saying is it has to be based upon the service of sale of alcohol or a statute. No, it says. The exclusion speaks of causing or contributing to the intoxication of any person, the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol. Well, that's what it allows. I'm talking about what it prohibits in the first sentence. And it says no person or administrator of the person who suffers injury or death, death as a result of the actions of an intoxicated person, it doesn't say who, has a cause of action, has any cause of action against any liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless, and there's an exception that doesn't apply here. And generally, Judge Roddick. So that means you can't recover under ordinary negligence for having sold liquor to somebody who dies as a result of having that liquor, of having been intoxicated. It seems to say. But I would say that what the courts of Ohio, and I guess I don't have their case, but the courts of Ohio, and I think the Mid-Continent has said that in their motion to summary judgment below, was that this is always applied to third parties who are injured by a drunk driver trying to sue the bar. Third parties, which means which doesn't help you. I apologize, Judge Roddick. But the case law that we've cited, the auto owners, the Prince v. Buckeye Union, and even going into Pennsylvania, and actually I shouldn't say the Pennsylvania case, but Prince and auto owners still talk about an individual who is injured, even though they may or may not be intoxicated from the bar, but the employees are basically putting an intoxicated person in a dangerous situation. Auto owners v. J.C. Casey, the Ohio Court of Appeals, clearly said you took an intoxicated person, you put them in another intoxicated person's car. That was a negligent act by the employees of the bar that do not fall within the exclusion of the policy. Do not fall within the exclusion or do not fall within the provision? Do not fall within the exclusion. Within the provision of what is covered. Correct. Yes, and in fact, I believe in the Prince v. Buckeye Union, there was a clear-cut dram shop claim made in that case, and they actually then brought in a separate count concerning other acts of the bar, and that was the case where they gave the keys back to a drunk patron and let him then go off. Here, the results of the actions of an intoxicated person, the injury, the intoxicated person is the driver, Mr. Baker. No, no, but the whole theory is that an intoxicated person was allowed to walk down the street, and if he hadn't been intoxicated, then it might not have been negligent to let him walk out of your store. And here, I wouldn't say that he was allowed. Basically, he was forced off the property because, I mean, that's— No, I understand he was forced off the property as an intoxicated person. Right. And if you're forced off the property and you're not intoxicated, it's hard to see how it's negligence. If you're blind or deaf. If you're put into this certain situation. There's no allegation that he was blind or deaf. No, no, but they're saying that what could be. Right. And once again, this is one thing, and I'm nervous here because, once again, we're going into, I think, when we talk about a duty again, this is a duty that the state court is supposed to decide. You know, we're talking about what's the motion for summary judgment in the Ohio Court of Common Pleas. Your time's up if you want to save your foreman. I will save the remaining time. I apologize. I was actually going to ask you, but I'll ask the other side here, which is that you might weave this in at some point. The style of the case is somebody versus Coder, which are the bar owners, right? Where are they in this litigation? You might think they'd be the ones that would be here demanding coverage. Your Honor— But they're not. So if you could just weave that in. You don't have to start with it, but weave it in at some point. I will because it's a very interesting aspect of the case. My name's Jim Imbregata. I represent Mid-Continent Insurance Company. It's our position that the U.S. District Court properly granted summary judgment to Mid-Continent Insurance Company because the claims that are being alleged in the complaint in the underlying action are clearly precluded by a valid and enforceable liquor liability exclusion. The facts of the case are—none of the facts that have been alluded to by the appellant's counsel are in the record. And we would ask that this court disregard any facts that are not in the record. The appellant's had an ample opportunity to make a record. If they chose not to do that, shame on them. The record in the case is the complaint, which the appellant below has—which the appellant has admitted is true and accurate copy and admissions of Ms. Dolan, who is the owner of the property. She was selling the property to Mr. Coder under a land contract. Mr. Coder, who is the liquor permit holder at West Andover, all three are insured under the Mid-Continent policy. The allegations in—it's been indicated in the pleadings is that the plaintiff's alleged— that the defendants, who are the bar, the liquor permit holder, and the land contract holder, the owner of the property, owned, operated, and possessed a liquor license for the bar known as The Inn. Paragraph 17, they allege in the complaint below that despite its knowledge, the plaintiff's decedent was intoxicated and had no ride home. The defendant, the Inn of West Andover, through its agents, negligently forced the plaintiff— That doesn't claim—might be a fact, but it doesn't claim that the intoxication occurred at the Inn, does it? Or that even any liquor was served at the Inn to this guy? Well, we know from the admissions that are binding on the insurers in this case that he was served intoxicating beverages at the Inn. And the Mid-Continent, to flesh some facts out, because the appellant chose not to, did serve admissions which were answered in the affirmative that the— Those are admissions not by Scardina, but by the people who are supposedly—you're trying to keep them from getting coverage. Right. The only reason that Scardina is here is because under Ohio law, the courts require that in order for an alleged tort victim to be bound by the declaratory judgment— They're really here because they think the insurance may be the better asset than whatever else they have in their actions against the bar. It's a money grab. But at least with respect to some of these admissions, like the admission that the decedent called a ride but left the property first, they're not in a position to admit that. They can claim it. I believe that the Inn certainly is in a position to admit that. If that conduct is known by their employees and that is what's reported to the employer, certainly they would have the right to make that admission. They're a party. And we believe that that's, in fact, what occurred. In terms of determining whether there was—see, we've got this sort of—some of this argument is going to could they win, could they be defeated in various winnings, as opposed to do you have a duty to defend? We don't want to go there, Your Honor, because that argument doesn't have to occur. The only argument in this case is look at the complaint. Let's look at what was pled. Look at 17. That's really, at least to me, as I indicated, the question is can they squeeze 17 out of the exclusion? And it says that you negligently forced decedent to leave the bar. It does say that he was intoxicated. So my first question is suppose they didn't pled—suppose it was a person who said, you know, I was blind or I was deaf and they forced me to leave the bar. Would the liquor exclusion preclude coverage there, preclude defense? Without the allegation of intoxication, no. But we're faced with the allegation of intoxication. Okay, I understand. Certainly. And the complaint doesn't allege that they caused the intoxication. Well, regardless of who caused the intoxication, under Ohio law, all claims against a permit holder have been merged into the Dram Shopped Act. Well, but you just told me, I thought that the deaf person could have a cause of action. You're still against a permit holder. But integral to the complaint in this case is the allegation of intoxication. Well, but then that's a different statement than the one you just tried to make. And I apologize if I acted too broad. The first one is overstated. Yes, and I apologize, Your Honor. Now we're back and you're saying any claim in which intoxication is involved, all right, so that, for example, man falls down a flight of stairs that is completely rickety, completely falling apart, okay, if he's not drunk he has a cause of action for negligence. If he is drunk, even though the facts are, anyone would have fallen. He doesn't have a cause of action? Well, those aren't our facts. Well, but you're trying to give me a broad statement of law which says that if intoxication is involved, it merges into Dram Shopped. Isn't that your statement? Your Honor, what I would like— I'm probing you on that and you're sort of not, you're sort of backing up a little bit. I would— You don't have to apologize, just, you know, are you overstating it? In Auburn versus this case. The difference is, if you'll pardon me, the difference is that walking down a rickety staircase is different from forcing someone to leave your bar who has no ride. Which might be worse. Because, well, I don't know, but that's— I don't believe there is any claim, I don't believe there is any claim for negligently telling someone you're being disruptive, you've got to go. And that's the crux of the matter. Your argument hinges on what you just said. You have to—and basically that, as I understand it, I wanted to ask you this, is the argument in your brief, which is basically there is no claim, there is no law in which you can be found negligent just for having no ride and being told to leave the bar, even if it's out in the wilderness kind of bar, right? There's got to be something intoxicated in order for it to state a cause of action. So that—and I think that if you assume that, then you run up against—your opponent runs up against the language of the statute, which says if it is intoxication that is necessary to your argument, you just can't recover it. So then my question is, assume that's correct. Assume that the law is, and I know that there's differences and nuances and so forth. Assume that the law is that this has asserted a claim which has no basis in Ohio law, right? Do the defendants nonetheless have to defend a claim that has no basis in Ohio law? I mean, why can't you say they still and all nonetheless have the requirement because it alleges something? Your exclusion in the statute is the Dramshop Act claims, right? That's the exclusion in the contract, right? Yes. Liquor is broader than Dramshop. But that's the one that's persuasive to me, is that you have this Dramshop Act preclusion. But what if there is another claim that is stated in the complaint which fails as a matter of law under Ohio law? Does that mean it doesn't fall within the contract? Or does the contract still and all nonetheless require defense so that you can prove in the court that it has no basis under Ohio law? Do you see my question? Yes, I do, and it would be our position that that is a different case. That's not this case. We know that. What if it is this case? It seems like if we accept your argument, that's where we arrive. If we accept your argument, which, as I take it, you know, and we can argue about whether it's a good argument or not, the argument seems to be that this alleges negligence because you ejected an intoxicated person, and it is alleged to be alleged outside of the Dramshop Act exception. It's alleged not to fit within the liability that's provided for in the Dramshop Act. It's a freestanding negligent claim based on negligently ejecting an intoxicated person. What if it just said that? In addition to liability under the Ohio Dramshop Act, paragraph 18A, we're assuming a negligent claim for ejecting an intoxicating person, and it doesn't say anything about this statute, which seems to preclude such actions. Why wouldn't that require defense, even if one of the defenses is it's statutorily precluded? It wouldn't only be statutorily precluded. Ohio just doesn't recognize that claim at all. Even so, why can't you raise a claim that's going to lose and get defense of that claim? As long as it fits within the, that's my question. If a claim just loses under any fair reading of Ohio law, but that's okay, don't they still have to defend it and go into court and prove that it loses under Ohio law? First thing we have to deal with is, is there an occurrence? Is there an occurrence? If there's an occurrence, then is that claim dealt with by a valid and enforceable exclusion in the policy? If, in fact, the. . . You seem like you don't want to answer the question. Well, you know. . . I mean, as a generality, don't insurance companies have to defend against baseless claims? That's my question. Depending on the language of the policy, that's correct. I'm just saying, but as a generality, before you get to the exclusions,  generally that's why you buy insurance, is to defend against claims, baseless or not. I would disagree in one respect, Your Honor, is if the underlying claim is clearly, is covered by an exclusion, whether it's baseless or not, there's no duty to defend. We agree with that, but I think the question. . . I think we got an answer, which is, if it's simply that the claim is baseless, you might. . . There may be a duty to defend under that situation, but on the facts of this case, there's no reasonable way to get there. And I think the court below understood that. That's only an argument you would make to the court when you go in and defend. Because when you said there's no cause of action for pushing somebody out of your bar, you had just earlier, I thought, agreed with me that if he was blind or deaf, he might have a cause of action. But this individual, it's nowhere in the record, did he have any type of disability that would change that. No, no, but your statement, you made the flat statement, there's no cause of, there can't be a cause of action for putting somebody out of the bar. And I said, what about a person who is disruptive, but is stone sober, but is also blind or deaf? You throw him out, there may be a cause of action for negligence, isn't there? I'm not in agreement that there necessarily would be. The person has- I don't think you have any- I don't have any- And that takes us to basically- Yeah, I have no authority for that proposition, Your Honor. If that person was a protected class and somehow- It's not discrimination, it's just that somebody who you were clearly putting in peril because he's blind- The person had the wherewithal to enter the bar voluntarily. It's not a right to stay in the bar. They have no right. If you're going to be disruptive, the tavern owner has the right to exclude you. That's what was done in this case. And the issue of the Prince versus Buckeye Union, and going back to the pleadings, we believe the court below understood that the only way to read these pleadings is as a dram shop violation. Because that's the only common sense reading of that count. Because without the dram shop, there's nothing. And the court understood that- Well, suppose paragraph 18 wasn't in there, okay? Would you say that we refuse to defend because it's really a dram shop act case, and therefore we won't defend? Would that have been your position? Or would you just say this is a nonsense case and we won't defend it? I don't believe that you have to argue a violation of the dram shop for it to come within the purview of the liquor liability exclusion. The fact that it is integral to the complaint that he was intoxicated- The liquor exclusion is anything arising from, what, the service of alcohol? Yes, causing or contributing to the intoxication of the person, furnishing of alcohol to a person under the legal drinking age or under the influence, or any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcohol. The first two parts, again, they don't allege that you furnished him with any alcohol, do they? I don't see in the complaint. Now, you say that you've got admission by the bar on it. I've got admission to indicate that they did. You've got to rely on the dram shop. We believe that that's all that, and the court below, we believe correctly that, yeah, that's the only common sense, that's the only common sense interpretation of this complaint. And we have to use common sense. We believe the court below had to use common sense and did. I see that I have the red light. I would just like to add one thing, Your Honors. When the appellant talks about the Prince cases and the other cases that talk about an exception to the dram shop, there's only one exception under Ohio law, and that's after a tavern owner takes keys and gives keys back. We read the case. For all these reasons, Your Honors, we would request that this court affirm the decision of the court below. In all respects, thank you. Thank you. You have four minutes for rebuttal. Thank you. And Judge Rogers, I think you got it right, though, there is to the ejectment issue because it's going back to then the Penn Central cases. You know, these are issues that he wants to do the motion for summary judgment, that's the state court. He wants to do it here. Yet now in the Penn America v. Peccadillo's case in Pennsylvania, they did find that that ejectment of intoxicated patrons fell outside of the liquor liability exclusion. And so then the issue, the appellate court there said that that's an issue that, you know, you've got to figure out if that's a duty in the case concerning the girl that then sued them, whether or not that was within the exclusion or outside the exclusion. So the cases there basically, Penn America, once again, these do fall outside of this. And he says the common sense reading, though, is that, number one, they did force, they ejected Mr. When you say it falls outside, that's falling outside the cause of action. What's that? It's falling outside the cause of action that's provided in the Dram Shop Act. It falls outside, yes, it falls outside the exclusion. Because, yes, when they're ejecting him, and he does go back to this, well, we have the admission. The exclusion doesn't talk about, doesn't have those kinds of limitations in it. The exclusion basically limits itself, and you have to hold, you know, the law is basically that you have to nearly construe exclusions against the insurer. Now you're talking about exclusions to the policy. Right. Now you're talking about exclusions in the statute. Oh, no, no, I thought you were talking about exclusion to the policy. That's what I thought you were talking about. I'm talking about the statutory preclusion of liability. Right. That I've been talking about. Statutory preclusion of liability is broad and then it has an exception. Right. And those cases talk about things that aren't within the exception to the broad exclusion of liability. It seems to me that if you win here today and you go and litigate this case, unless you litigate it without mentioning the fact that he was intoxicated, which will make it harder for you to win on the facts, it would seem, that you're running right smack into the statutory preclusion of liability. But my question to your opposing counsel is, well, so what? Do you still have to defend it? Correct, and that's the argument that I've been making, is the policy still requires them to provide a defense. And the facts are coming out very different because, you know, as I said, I came into the case late. In fact, we got the case basically the day after the motion, his motion for summary judgment was filed to the district court, and then all of a sudden we had to get this case going. The facts are coming out very different from what the admissions are saying. And that's the thing is they have refused to For insurance purposes, the facts are what's in the complaint. Exactly. You've got to look at this complaint and see whether it raises a claim. It appears to me to raise a claim that has no basis, that has no likelihood of success whatsoever under the law of Ohio. But maybe you still have to defend it. But as he said, with the Pennsylvania case, that is what happened. I'm not sure. Has there been a challenge to the pleadings in the state court? No. But there's discovery ongoing. There's discovery ongoing. Things have been stayed because the drunk driver is still going through the criminal matter. That has gone up to the Court of Appeals because of the motion to suppress. So the continuing discovery is ongoing. The trial court case has been stayed. And to go back to your issue as to why the bar and the bar owners are not here, basically, we discussed this early on with the counsel for the bar owner. It's a matter of money. They don't want to spend the money to try to defend this action. It's a matter of expenses is basically what that is. Well, it would make sense that they don't want to because they want to litigate it under the Dram Shop Act, and they're clearly not required to do that. This other claim, which is almost a sure loser. I can't go into those. Why should they have to go into court and argue a sure loser when they have to spend a lot of money defending the Dram Shop statute, which they're not contractually required to defend? It's kind of hard to defend them in part and not in other part. So they get dragged in by a near, let's say, insubstantial. Well, the bar owner is going to have to defend under the Dram Shop Act. Right now the bar owner has to, and they do have an attorney defending, but now this is another expense. What's that? The insurance should have picked this up. The insurance should have picked this up in the first place, but the bar owner now is having to pay money to an attorney to defend two cases that he basically cannot afford. It's basically what it's come down to. With that, I would ask that the court reverse the decision, as they did in the Prince v. Buckeye Union insurance case, to actually enter summary judgment on behalf of Mrs. Gardena. Thank you. Thank you, counsel. That case will be submitted.